1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **SOUTHERN DISTRICT OF CALIFORNIA**

9 UNITED STATES OF AMERICA ,          CASE NO. 14cr3057 WQH

10                           Plaintiff,   ORDER

11    vs.
SONJA HOLDER(4).

12                          Defendant.

13 HAYES, Judge:

14        The matters before the Court are the motion to suppress wiretap evidence filed

15 by Defendant Sonja Holder (ECF No. 188).

16                        **BACKGROUND FACTS**

17        On October 21, 2014, the grand jury returned an indictment charging fourteen

18 defendants including Defendant Sonja Holder, with conspiracy to distribute controlled

19 substances in violation of 21 U.S.C. sections 841(a) and 846.  (ECF No. 1).

20        During the investigation which led to the indictment, the government sought and

21 received authorization to conduct electronic surveillance on a total of twenty-nine target

22 telephones over a period of nine months.  The record shows that orders authorizing wire

23 and electronic communications were signed by the district court on January 2, 2014;

24 January 30, 2014; February 27, 2014; April 7, 2014; May 2, 2014; June 6, 2014; June

25 20, 2014; July 24, 2014; and September 12, 2014.  Each order was based upon an

26 application and supported by an affidavit in support of the application.  (ECF No. 247).

27 Defendant Holder was intercepted in the background of a single phone call intercepted

28 on phone line T-21 on June 9, 2014.  (ECF No. 118 at 3, ECF No. 219 at 2).  Defendant

1   moves the Court to "suppress evidence derived from the government's wiretapping of

2   cellular phones referred to in the June 6, 2014; June 20, 2014; July 24, 2014; and

3   September 14, 2014 applications and orders."  (ECF No. 188 at 2).

4                           **CONTENTIONS OF THE PARTIES**

5           Defendant Holder moves the Court to suppress wire and electronic evidence on

6   the grounds that there was not an adequate showing of necessity to intercept

7   communications on T-21 in the June 6, 2014 wiretap application.  Defendant contends

8   that the initial decision to allow the interception of T-21 in the May 2, 2014 order was

9   not supported by a showing that ordinary investigative techniques were utilized prior

10   to the initial request to intercept the T-21 line.  Because the May 2, 2014 order did not

11   establish necessity to intercept the T-21 line, Defendant contends that the continued

12   interception authorized in the June 6, 2014 order was not proper.  Defendant further

13   asserts that the Government failed to comply with the minimization requirements of 18

14   U.S.C. section 2518(5) and the automatic termination requirements of 18 U.S.C. section

15   2518(1)(d).

16           The Government agrees that Defendant has standing to challenge the June 6,

17   2014 order allowing the interception of T-21.  The Government asserts that the facts

18   contained in the affidavit supporting the May 2, 2014 order, and the affidavit supporting

19   the June 6, 2014 order, provide a full and complete statement specific to the

20   investigation to show that normal investigative procedures had been tried and failed or

21   reasonably appeared to be unlikely to succeed and too dangerous.  The Government

22   contends that the intercept orders complied with all requirements of the statute.

23                             **RULING OF THE COURT**

24   **Standing**

25           Defendant Holder moves the Court to suppress evidence intercepted pursuant to

26   the June 6, 2014 order.  Defendant Holder asserts that "it is necessary to work back in

27   time" to the original interception of T-21 authorized by the May 2, 2014 order to

28   determine necessity.  (ECF No. 188 at 14).  Defendant contends that the facts in the

1    May 2, 2014 affidavit demonstrate necessity as to other phone lines and do not

2    demonstrate necessity to intercept T-21.  Defendant asserts that the June 6, 2014 order

3    authorizing the extension of T-21 was improperly issued "on information derived from

4    the government's original wiretapping of T-21." *Id*. at 23.

5         The Government contends that Defendant cannot challenge the necessity showing

6    for the May 2, 2014 order because she was not a person against whom the interception

7    order was directed.  In addition, the Government contends that Defendant cannot use

8    the "fruit of the poisonous tree" doctrine to challenge the May 2, 2014 order.

9         "A defendant may move to suppress the fruits of a wiretap only if his privacy was

10   actually invaded; that is, if he was a participant in an intercepted conversation, or if such

11   conversation occurred on his premises." *United States v. King*, 478 F.2d 494, 506 (9th

12   Cir. 1973).  Defendant has no standing to challenge the May 2, 2014 wiretap order

13   because she was not a participant in a conversation intercepted pursuant to this order.

14   Defendant has standing to challenge the necessity determination for the June 6, 2014

15   order as well as the facts in the affidavit in support of the May 2, 2014 order

16   incorporated into the affidavit in support of the June 6, 2014 order.  (ECF No. 247 at

17   367).

18   **Necessity**

19        Wiretap authorizations are governed by the Omnibus Crime Control and Safe

20   Streets Act, 18 U.S.C. §§ 2510-2522.   "To obtain a wiretap, the government must

21   overcome the statutory presumption against this intrusive investigative method by

22   proving necessity." *United States v. Rivera*, 527 F.3d 891, 897 (9th Cir. 2008)(citations

23   omitted).  The purpose of this requirement is to "assure that wiretapping is not resorted

24   to in situations where traditional investigative techniques would suffice to expose the

25   crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974).

26        Section 2518(1)(c) provides that the affiant in support of an application for a

27   wiretap must provide "a full and complete statement as to whether or not other

28   investigative procedures have been tried and failed or why they reasonably appear to

1  be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).  "*Each*

2  wiretap application, standing alone, must satisfy the necessity requirement."  *United*

3  *States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988) (emphasis in original).  The

4  "full and complete statement" requirement of Section 2518(1)(c) is satisfied where the

5  affidavit provides "specific probative facts" which "show with specificity why *in this*

6  *particular investigation* ordinary means of investigation will fail."  *United States v.*

7  *Commito*, 918 F.2d 95, 97-98 (9th Cir. 1990) (quotation omitted) (emphasis in original).

8  A judge must "determine that the ordinary investigative technique employing a normal

9  amount of resources have failed to make the case within a reasonable period of time."

10  *United States v. Spagnuolo*, 549 F.2d 705, 711 (9th Cir. 1977).  However, "the

11  government need not exhaust every conceivable investigative technique in order to

12  show necessity." *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000)(citation

13  omitted).

14      In this case, Defendant Holder was intercepted in the background of a single

15  phone call on June 9, 2014 intercepted on the T-21 line.  The interception of  T-21 was

16  authorized as a part of an investigation of a drug trafficking organization in the Los

17  Angeles area over a period of approximately nine months.  The initial wiretap was

18  authorized on January 2, 2014 for the wire and electronic communications of Antonia

19  Hernandez and Ruben Tovar-Ordonez as a part of the investigation into the distribution

20  of cocaine, methamphetamine, and marijuana.  Subsequent wire interception orders

21  orders were issued on January 30, 3014 and on February 27, 2014.

22      In support of the April 7, 2014 application, the affiant identified a previous

23  investigation of the target subjects in the Los Angeles investigation by government

24  agents in Tampa, Florida.  Through a cooperating defendant in the Tampa investigation,

25  the affiant discovered that target subjects in the Los Angles investigation had also

26  supplied cocaine to a Jamaican male known as "El Papa," a New York based cocaine

27  distributor.  The cooperating defendant stated that El Papa had traveled to Los Angeles,

28  California to coordinate cocaine purchases with target subjects in the Los Angeles

1   investigation and that El Papa uses female narcotics couriers to smuggle cocaine from
2   California to New York.

3        In support of the May 2, 2014 application, the affiant informed that court that a
4   telephone number referred to as T-21 was believed to be subscribed to "Papa." The
5   affiant described "Papa" as a new primary target subject of the May application,
6   believed to be a narcotics distributor in New York who acquired cocaine and
7   methamphetamine from the target subjects of the Los Angeles investigation. Based
8   upon intercepts, and information from the Tampa investigation, the affiant stated that
9   Papa had traveled to Southern California to oversee the purchase and shipment of
10  narcotics from Southern California to New York.   The affiant detailed wire
11  communications between Papa using the T-21 line and a target subject using the T-8
12  line discussing a suspected drug transaction on April 21, 2014.

13       In the necessity section of the May 2, 2014 affidavit, the affiant described the
14  particular traditional techniques that had been employed to investigate Papa. The
15  affiant described attempted physical surveillance based upon intercepted calls, which
16  resulted in a suspect correctly identifying vehicles that participated in the surveillance,
17  and failed to identify a completed delivery involving Papa believed to have been
18  coordinated over other telephone lines. The affiant reviewed the problems using
19  confidential sources and undercover operations discussed in prior affidavits and detailed
20  the success of the execution of a state search warrant in identifying another suspect.
21  The affiant stated that "the initial interception of T-21, used by FNU LNU, aka Papa,
22  is necessary for the following reasons: first to fully identify Papa; second, to identify
23  the type and quantity of narcotics that RAMIREZ and NORBERTO are supplying to
24  the New York area in collaboration with Papa; third, to identify how Papa is shipping
25  from California to New York and how Papa is returning the drug proceeds to
26  RAMIREZ and NORBERTO; and fourth, to identify and investigate Papa's distribution
27  network in New York." (ECF No. 247 at 332-33.) The issuing judge concluded that
28  normal investigative procedures have been tried and failed, reasonably appear to be

14cr3057 WQH

1   unlikely to succeed if tried, or are too dangerous to employ; and that there was probable

2   cause to believe that T-21 was being, and will continue to be, used in connection with

3   the commission of criminal activity.  The issuing judge authorized the initiation of the

4   interception of wire and electronic communications to and from T-21 in the May 2,

5   2014 order.  (ECF No. 247 at 281).

6   In the affidavit in support of the June 4, 12014 application, the affiant informed

7   the issuing judge that he had identified 'Papa' as Doyley and also identified "HOLDER

8   for the first time as one of  DOYLEY's associate."  *Id*. at 373.  The affiant described

9   intercepts of T-21 on May 15, 2014, and physical surveillance established on Doyley

10   on a number of occasions based upon on-going wiretap interceptions and other

11   information.  Through the intercepts and physical surveillance, the affiant located the

12   identity of the shipping company used by Doyley and Holder to ship narcotics, and law

13   enforcement conducted a seizure of narcotics on May 27, 2014 at the shipping

14   company.  The affiant described the attempts made to use confidential sources and

15   undercover operations.  The affiant described witness interviews of the employees of

16   at the shipping company, the seizure and search of boxes containing narcotics that

17   Doyley had purchased from target subjects, and a state search warrant to track a rental

18   vehicle used by Doyley.  The affiant described an investigation in New Jersey by DEA

19   agents into Doyley noting that the New Jersey DEA has not gathered evidence to

20   achieve the goals of this investigation, including fully identifying Doyley's distribution

21   channels.  The affiant stated,

22   [t]he continued interception of T-21 is necessary to learn when DOYLEY
     intends to return to California from New Jersey to acquire additional
23   cocaine and fentanyl from RAMIREZ, something that DOYLEY has
     indicated on prior intercepts over T-21 that he plans to do.  Knowing when
24   DOYLEY plans to acquire additional cocaine and fentanyl from
     RAMIREZ will allow me to further my investigation of DOYLEY's
25   suspected cocaine and fentanyl distribution channels in New Jersey.  One
     of the goals of this investigation is to identify any sub-distributors of the
26   fentanyl, in particular, because the distribution of fentanyl in New Jersey
     has been linked to many deaths.
27

28   (ECF No.  247 at 399).  The issuing judge authorized the initiation the continued

     interception of wire and electronic communications to and from T-21 in the June 6,

- 6 -                                        14cr3057 WQH

1 | 2014 order.

2 |     Defendant Holder was intercepted under the June 6, 2014 order and has not

3 | challenged the accuracy of any facts incorporated into the June 6, 2014 affidavit in

4 | support of the June 6, 2014 application to continue the interception of T-21. "Each

5 | wiretap application, standing alone, must satisfy the necessity requirement." *Carneiro*,

6 | 861 F.3d at 1176.  In addition, an extension affidavit is to provide "a statement setting

7 | forth the results thus far obtained from the interception, or a reasonable explanation of

8 | the failure to obtain such results."  18 U.S.C. §2518(f).  "The issuing court is required

9 | to make the same findings for an extension order as it is for an original order." *United*

10 | *States v. Brone*, 792 F.2d 1504, 1506 (9th Cir. 1986).

11 |     The affiant in this case did not rely upon conclusory statements and provided

12 | specific probative facts in each affidavit in support of each application.  The issuing

13 | judge reasonably concluded that the affiant made a sufficient showing that ordinary

14 | investigative procedures, employed in good faith, would likely be ineffective in the June

15 | 6, 2014 affidavit.  The objectives of the investigation included developing sufficient

16 | evidence to prosecute the target subjects and unidentified co-conspirators involved in

17 | the distribution of narcotics in California and New Jersey, and identifying the locations

18 | where the drugs and proceeds are stored.  The affiant informed the issuing judge that

19 | the drug distribution involving the T-21 line was current, and ongoing.  The affiant

20 | informed the judge that physical surveillance had significantly advanced the

21 | investigation, and that physical surveillance was only possible due to particular

22 | information obtained through wiretap intercepts. The affiant informed the issuing judge

23 | that confidential sources were not in a position to obtain information that would

24 | accomplish the objectives of the investigation, and that undercover operations could not

25 | be successful.   The affiant described his efforts to obtain information from the

26 | employees of the company used by Papa/Doyley to ship narcotics which was helpful

27 | in confirming other information regarding the extent of the drug distribution.   The

28 | affiant disclosed the information known to the investigation regarding Papa/Doyley to

1  the issuing judge and requested authorization to continue to intercept T-21 in order to

2  learn when Doyley intends to return to California from New Jersey to acquire additional

3  cocaine and fentanyl.  The affiant informed the issuing judge that Doyley indicated on

4  prior intercepts over T-21 that he planned to return to acquire additional narcotics.  The

5  affiant informed the issuing judge that knowing when Doyley plans to acquire the drugs

6  would allow the investigators to identify sub-distributors of fentanyl, a potent drug that

7  had caused numerous deaths from the use of heroin laced with fentanyl.

8         The issuing judge reasonably concluded that the affiant made a sufficient

9  showing that T-21 was currently used in criminal activity, that the continued intercept

10  of T-21 was necessary to learn when Doyley intended to return to California to acquire

11  cocaine and fentanyl, and that "ordinary investigative procedures, employed in good

12  faith, would likely be ineffective in the particular case." *United States v. McGuire*, 307

13  F.3d 1192, 1196 (9th Cir. 2002).  While the investigation had produced some results,

14  the issuing judge reasonably concluded that the goals of the investigation had not yet

15  been achieved, and that "ordinary investigative technique employing a normal amount

16  of resources [would] fail to make the case with a reasonable time." *Spagnuolo*, 549

17  F.2d at 711.

18  **Probable cause and Minimization**

19         Defendant contends that there was not an adequate showing of minimization.

20  Defendant asserts that the June 6, 2014 application listed seventy-five targets with

21  broad goals for the interception. Defendant contends that the minimization requirement

22  is useless where probable cause is not shown as to all targets and specific goals of the

23  investigation.   The Government asserts that the authorization for interception of

24  communications for a broad range of targets and criminal activity was supported by the

25  facts set forth in the affidavit.

26         Section 2518(5) requires that the Government conduct wire intercepts so as to

27  "minimize the interception of communications not otherwise subject to interception."

28  18 U.S.C. § 2518(5).  The Government has the burden to show minimization. *United*

1  *States v. Torres,* 908 F.2d 1417 (9th Cir. 1990).  In *Torres*, the Court of Appeals

2  explained:

3      Minimization requires that the government adopt reasonable measures to
       reduce the interception of conversations unrelated to the criminal activity
4      under investigation to a practical minimum while permitting the
       government to pursue legitimate investigation.    The standard for
5      minimization is reasonableness.

6  *Id.* at 1423 (citations omitted).  "The mere interception of calls unrelated to the drug

7  conspiracy does not indicate a failure to meet the minimization requirement."  *Id.*

8          In this case, the June 6, 2014 application and order contained reasonable

9  minimization procedures.  There are no facts to support the conclusion that any target

10 of the investigation or any goal of the investigation was not proper.  Defendant provides

11 no calls which Defendant asserts should have been minimized and no suggestion that

12 any minimization procedure was inadequate.  The record demonstrates minimization

13 efforts in accordance with 18 U.S.C. section 2518(5).

14 **Automatic termination**

15         Section 2518(1)(d) requires that each application for wire intercept include "a

16 statement of the period of time for which the interception is required to be maintained."

17 18 U.S.C. § 2518(1)(d).  This section states, "If the nature of the investigation is such

18 that the authorization for interception should not automatically terminate when the

19 described type of communication has been first obtained, a particular description of

20 facts establishing probable cause to believe that additional communications of the same

21 type would occur thereafter."  18 U.S.C. § 2518(1)(d).

22         Defendant contends that no description of facts is set forth in the affidavit in

23 support of the June 6, 2014 application.  The government contends that the affiant

24 explained in great detail throughout the successive affidavits the large-scale, on-going

25 drug trafficking conspiracy, and the goals of the investigation.

26         In this case, the affiant stated at the conclusion of the affidavit:

27      Based on facts above, the subjects appear engaged in long-term, ongoing
       criminal activity.  Accordingly, I request that authorization to intercept not
28      stop when the first sought-after communication is intercepted, but continue
       until the full scope of the enterprise is uncovered (including the identity

1  of all participants, their places and methods of operation, and the various
2  activities in furtherance of the enterprise) or for thirty days, whichever is earlier.

3  (ECF No. 247 at 401). The issuing judge ordered that "the interception of wire and/or

4  electronic communications authorized by this Court's order must terminate upon

5  attainment of the authorized objectives or, in any event, at the end of thirty (30) days,

6  whichever is earlier." *Id*. at 414. The facts set forth by the affiant were sufficient to

7  support the authorization of the issuing judge. The Court concludes that the order

8  complied with the requirements of 18 U.S.C. § 2518(1)(d).

9  **CONCLUSION**

10  IT IS HEREBY ORDERED that the motion to suppress wiretap evidence filed

11  by Defendant Sonja Holder (ECF No. 188) is denied.

12  DATED: July 16, 2015

13

14  *William Q. Hayes*

15  **WILLIAM Q. HAYES**
United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

14cr3057 WQH